### KELLY et al. v. ARANSAS COMPRESS CO. et al.

### No. 1524.

Court of Civil Appeals of Texas. Eastland.

Feb. 28, 1936.

Rehearing Denied March 27, 1936.

H. W. Wallace, of Cuero, and John C. North, of Corpus Christi, for plaintiffs in error.

Johns, McCampbell & Snyder, Kleberg & Eckhardt, and H. S. Bonham, all of Corpus Christi, for defendants in error.

FUNDERBURK, Justice.

J. P. Kelly, Jr., sued Aransas Compress Company, Jess M. Cook, N. A. Brown, and Southern Cotton Company, to recover 54 bales of cotton. Anderson-Clayton & Co. became a party by intervention. Of said 54 bales of cotton, 28 bales claimed by Southern Cotton Company and 13 by Anderson-Clayton & Co. were sequestered by Kelly. The sureties on the sequestration bond were J. W. Cook, E. A. Palmer, and H. Seekamp, who were brought in as parties upon a cross-action of Southern Cotton Company. The defendants asserted two defenses: First, ownership of the cotton through sales by Kelly to Cook, by Cook to Brown, and by Brown to Southern Cotton Company of the 28 bales, and by Brown to Anderson-Clayton & Co. of the 13 bales. Second, estoppel. Southern Cotton Company, in cross-action, sought damages for wrongful sequestration. Jess M. Cook was dismissed from the suit.

Upon a nonjury trial, it was adjudged that Kelly take nothing. Anderson-Clayton & Co. was adjudged to own the 13 bales of cotton, and Southern Cotton Company the 28 bales. As a part of the costs adjudged against plaintiff was $561 for storage charges upon the sequestered cotton. The court denied recovery in favor of Southern Cotton Company upon its claim for damages. Kelly and the sureties upon the sequestration bond brought the case here upon writ of error. Plaintiffs in error will be referred to as plaintiff, or Kelly, and the defendants in error will be referred to as defendants, or by name.

Plaintiff presents his contentions under five assignments of error. Each assignment of error is grounded upon an allegation as to what was shown by the undisputed evidence. In other words, the assignments of error refer to the judgment and to particular phases of the judgment, and assert error on the ground that the undisputed evidence showed that plaintiff was the owner of the cotton, and had never parted with his property therein. The record does not contain conclusions of fact and law of the trial judge showing the basis of the court's judgment. Under the pleadings, even though the undisputed evidence may have shown title to the cotton in Kelly, the judgment may nevertheless be proper because of a finding of facts constituting an estoppel. There are no assignments of error which call in question the correctness of the judgment in so far as it may be predicated upon estoppel. We therefore have no occasion to examine the statement of facts to ascertain whether there was evidence, or the sufficiency thereof, to show an estoppel. If there was no such evidence, or if the evidence was insufficient, the error would not be fundamental, and in the absence of assignments of error, we would be unauthorized to consider those questions. It would, therefore, appear that should the record support plaintiff's assignments of error, they would not conclusively establish error in the judgment. Upon this ground alone, we think, we would be required to affirm the judgment.

■ But, if we confine consideration to the contentions presented under the assignments of error, we think it cannot be said that the undisputed evidence showed that Kelly was the owner of the cotton. The only evidence to that effect was Kelly's testimony that his agreement with Cook was

that the cotton was to remain his until the sale price was paid, and that triplicate bills of lading were delivered to him by the Cotton Trucking Company which transported the cotton to the Compress Company, which bills of lading showed that Kelly was both consignor and consignee, and that he had not indorsed or delivered said bills of lading. There were facts and circumstances to warrant the judge, as trier of the facts, in finding that the contract was not as thus testified to by Kelly, but, on the contrary, that there was a verbal sale of the cotton with the mere expectation that Cook would make prompt payment of same after it was weighed and placed in the warehouse at Corpus Christi, just as payments had theretofore been made under similar sales handled in the same way. It may be admitted that in a contest between Kelly and the carrier the bills of lading would have conclusively evidenced a sale only upon payment of the purchase price, but the Trucking Company was not a party to the suit. The facts show that the triplicate bills of lading were delivered to and retained by Kelly. At the very least, the evidence wholly fails to show that the truck drivers, or any one else retained any written evidence that title to the cotton remained in Kelly. Kelly knew that the cotton was to be turned over to the Compress Company. He knew, or was chargeable with knowledge, that negotiable warehouse receipts would be delivered to some one as owner of the cotton when it was accepted. Kelly gave no direction to the Compress Company to issue the receipts to himself. There is no evidence, even, that he directed the truck drivers to request that they be issued to him. He must have known that negotiable warehouse receipts for previous shipments delivered in the same way had been issued to Cook, otherwise Cook could not have sold and delivered the cotton to others as he did. There was no evidence whatever of any use made of the triplicate bills of lading to carry notice to the Compress Company that Kelly was the owner of the cotton. These and other circumstances, we think, raised an issue of fact of a verbal sale of the cotton from Kelly to Cook not dependent upon a pre-payment of the purchase price.

■ But, if we be mistaken in this construction of the evidence, and it should be granted that the evidence showed no valid sale, still we think there was evidence which showed that the possession and power of control of the cotton was so committed to Cook as, under the circumstances, to invest the latter with such indicia of ownership as in equity to estop Kelly from claiming as against an innocent purchaser for value that he had never parted with title to the cotton. As said before, it is not our duty to examine the statement of facts to ascertain the existence of such evidence, or the sufficiency thereof, and in the absence of assignments of error, it is our duty to assume that the evidence established the estoppel.

■ We sustain the cross-assignments of error of the partners constituting the Southern Cotton Company to the effect that the court erred in not awarding damages as claimed, based upon interest at the legal rate upon the value of the 28 bales of cotton seized under the sequestration writ. The judgment was an adjudication that the sequestration was wrongful. The evidence was undisputed that upon the market the partners operating in the firm name paid $1,595 for the cotton. It was detained under the sequestration approximately three years and six months. The interest on said sum for such time would be $334.95. That interest on the value of sequestered property thus claimed but which plaintiff fails to recover shows the sequestration to be wrongful, and justifies an award of damages, was the holding in Simpson v. Lee (Tex.Civ.App.) 34 S.W. 1053, which, it seems to us, announces a correct rule. The principle of the award of interest at the legal rate upon the value of property wrongfully detained is given full recognition in Texas Cent. R. Co. v. Hannay-Frerichs & Co., 104 Tex. 603, 142 S.W. 1163.

We therefore conclude that the judgment of the court below should be affirmed except as it failed to award recovery in favor of the partners constituting the firm of Southern Cotton Company of damages in the sum of $334.95 against Kelly and the sureties on his sequestration bond, but as to the latter, that said judgment be modified to award recovery thereof, and, as so modified, that the judgment be affirmed, which is accordingly so ordered.